UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| GRACIELA DEL CARMEN ROMERO, § § Plaintiff, § § v. § § P.S.O.B., INC., d/b/a PACIFIC STAR § RESTAURANT & OYSTER BAR; and § JOAQUIN LEYVA, § § Defendants. § | CASE NO. 1:19-cv-00683-RP |

**PLAINTIFF'S AGREED MOTION FOR APPROVAL OF SETTLEMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

In compliance with the Court's Order (Dkt. 9)[1], Plaintiff Graciela del Carmen Romero hereby submits a true and correct copy of the parties' settlement agreement as Exhibit A to this motion. In support of a finding of fairness, Plaintiff shows the following.

### I.   Argument

On July 3, 2019, Plaintiff filed this action[2] alleging that Defendants violated her rights under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), by willfully failing to pay her time-and-a-half of her regular rate of pay for her overtime hours worked as a dishwasher at Defendants' restaurant. (Dkt. 1 at ¶ 1.) Specifically, Plaintiff contended that she often worked 42 to 50 hours per week, and that Defendants paid her only her regular, "straight-time" hourly wage for her hours in excess of forty. (*Id.* at ¶¶ 14, 17.) Defendants contested certain allegations made

---

[1] Plaintiff's counsel apologies for inadvertent delay in seeking dismissal of this matter.
[2] The settlement in this case resolved only Plaintiff's FLSA overtime claim; this suit was not brought as a collective action. (*See* Dkt. 1.)

*Plaintiff's Motion to Approve Settlement*       1

in the lawsuit and deny liability. (Ex. A at ¶ 6.) In order to avoid the uncertainties and costs of litigation (*id*.), the parties resolved the bona fide disputes between them via arms-length negotiations through their respective attorneys (*id*. at ¶ 8 (a.)). There is a "strong presumption" in favor of finding an FLSA settlement fair and reasonable. *See, e.g.*, *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008). The particular circumstances of the settlement at issue warrant approval for the following reasons.

   a) **Defendants disputed the number of hours Plaintiff alleged working and the relevant limitations period, but the settlement gave Plaintiff the maximum monetary consideration to which she was entitled at the time the settlement was executed.**

The overtime pay provisions of the FLSA require employers to pay non-exempt employees one-and-one-half times their regular rate of pay for all time worked in excess of forty hours during any given workweek. 29 U.S.C § 207. Where, as in this case, the employee is compensated on an hourly basis, the hourly rate is her regular rate. 29 C.F.R. § 778.110. Plaintiff alleged that she was paid only her regular rate for her hours worked, and that she was denied the half-time premium for all hours in excess of 40 she worked in any workweek. (Dkt. 1 at ¶17.)

Fruitfully endeavoring to allay significant fee and cost accrual, the parties focused their efforts on resolution soon after Defendants were served with process—which is why Defendants never filed an answer in this action. (Declaration of Anna Bocchini, attached hereto as Exhibit B, at ¶ 14.) The parties engaged in a period of informal discovery, during which Defendants shared Plaintiff's pay records and timeclock data for the three years preceding the initiation of the lawsuit. (*Id*. at ¶ 15.) Each side reviewed the raw data and analyzed it independently, reaching a uniform consensus that the maximum amount of overtime wages possibly owed to Plaintiff totaled $2,753.75. (*Id*.) The chart below depicts the data culled from the records shared, and the basis of the parties' computation of Defendants' uppermost exposure for unpaid overtime wages. (*Id*.)

| Date Range | Regular Rate ("RR") | Total Overtime Hours In Timeclock Records ("OT Hrs") | Maximum Overtime Pay Owed (=RR * .5 * OT Hrs) |
|---|---|---|---|
| 7/2016-12/31/2017 | $10 | 312.95 | $1,564.75 |
| 1/1/2018-3/30/2019[3] | $12 | 177.75 | $1,066.50 |
| 4/1/2019-5/23/2019[4] | $12.50 | 19.6 | $122.50 |
| | | ***Maximum Allegedly Owed*** | **$2,753.75** |

Plaintiff alleged that the timeclock data accurately reflected her actual hours worked, whereas Defendants took the position that the records artificially inflated Plaintiff's hours. (*Id.* at ¶ 16.) Additionally, an individual generally has a period of two years "after the cause of action accrued" in which to file an FLSA complaint; the limitations period is lengthened to three years only if a plaintiff proves that the violations at issue were "willful." 29 U.S.C.A. §255(a). Plaintiff pleaded that the alleged nonpayment of overtime wages constituted a willful violation of the Act (Dkt. 1 at ¶ 22); but Defendants contended that Plaintiff could not meet her burden of proof to expand the default two-year limitations period (Ex. B at ¶ 16.)

Despite their bona fide factual disputes, pursuant to the terms of the parties' settlement agreement, Defendants agreed to pay, and have paid, Plaintiff a total of $5,507.50—consisting of the full $2,753.75 to which Plaintiff believed she was entitled, together with an equal amount in liquidated damages.[5] (Ex. A at ¶ 2. (a.)-(b.); Ex. B at ¶ 17.) The settlement gave Plaintiff "everything to which [she alleged she was] entitled under the FLSA at the time the agreement [was] reached," and is thus binding and enforceable. *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) (citing *Thomas v. Louisiana*, 534 F.2d 613, 615 (5th Cir. 1976)).

---

[3] Plaintiff had a three-month break from her work with Defendants during this period.
[4] May 3, 2019 was Plaintiff's last day of employment with Defendants.
[5] An employer found to be in violation of Section 207 of the FLSA "shall be liable" to the aggrieved employees for unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216 (b).

*Plaintiff's Motion to Approve Settlement*        3

b) **The non-monetary terms of the settlement agreement are consistent with the legislative purpose of the remedial statute under which the claim was brought.**

In negotiating the terms of the settlement agreement, the parties were mindful of the public-private interests embodied in the FLSA, a statute designed "to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945).

The parties' agreement is not subject to any requirement of confidentiality. (*See* Ex. A.) The release language was narrowly tailored to wage and hour claims deriving from the facts at issue as well as compulsory counterclaims. In exchange for the monetary consideration, Plaintiff was only required to release "all claims that were asserted in this lawsuit," and the parties further mutually agreed to release "all other claims and counterclaims deriving from a common nucleus of operative facts that could have been asserted in this lawsuit." (*Id*. at ¶ 4.) Further, the agreement contains an anti-retaliation provision in which Defendants agreed "not to intimidate, threaten, restrain, coerce, blacklist, or in any manner discriminate against Plaintiff," and certified that they had not and would not cause any other person to do so. (*Id*. at ¶ 7.) The non-monetary terms in the parties' settlement agreement thus appropriately heeded the legislative purpose of the FLSA.

c) **The attorney's fees and costs paid under the settlement were negotiated above Plaintiff's full recovery and represent a fair compromise of the lodestar value of Plaintiff's counsel's investment in the successful outcome.**

Pursuant to the parties' settlement agreement, Defendants paid Plaintiff's counsel's nonprofit law firm, the Equal Justice Center ("EJC"), $3,492.50 to settle Plaintiff's claim for attorney's fees and costs. (*Id*. at ¶ 2 (c.); Ex. B at ¶ 17.) This payment did not cut into Plaintiff's full recovery of her maximum potential damages, but rather was a separate sum paid in addition to Plaintiff's alleged wages and liquidated damages. (Ex. A at ¶ 2 (a.)-(c.).)

When a plaintiff is a prevailing party, the FLSA mandates that Defendants pay reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b). Recoverable attorney's fees are not limited to those accrued by profit-making attorneys in private practice. Salaried attorneys of nonprofit legal aid organizations are entitled to recover a reasonable fee based on the market value of their services. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Work performed by legal assistants is separately assessed and included in fee awards under fee-shifting statutes. *Missouri v. Jenikins*, 491 U.S. 274, 286 (1989) (finding that fee awards must reflect the growing custom of separately billing for the services of paralegals and law students); *Alter Fin. Corp. v. Citizens & S. Int'l Bank*, 817 F.2d 349, 350 (5th Cir. 1987) (finding that the fee award properly included an assessment for work done by paralegals and a law clerk); *see Jacobs v. Mancuso*, 825 F.2d 559, 563 (1st Cir. 1987) (billing for legal assistants "is to be encouraged by separate compensation in order to reduce the time of more expensive counsel").

The $3,492.50 figure for which the parties settled Plaintiff's claim for attorney's fees and costs constituted the sum of the costs incurred by Plaintiff's counsel and a fair and reasonable compromise of the lodestar value of the EJC's time invested in the matter through September 3, 2019.[6] The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for similar work. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The undersigned counsel for Plaintiff maintained detailed, contemporaneous records of costs incurred as well as time spent on each task that was necessary to the successful resolution of this matter. (Ex. B at ¶ 8.) This information is summarized in the spreadsheet attached as Ex. B-1 to the Declaration of Anna

---

[6] Plaintiff's counsel invested additional hours in the resolution of this matter beyond this date, but the parties' negotiations centered on the fees accrued prior to the date on which they reached an agreement as to the monetary settlement amount. (Ex. B at 8.)

*Plaintiff's Motion to Approve Settlement*　　　　5

Bocchini. The attached records also demonstrate that counsel has exercised sound billing judgment to write off a significant amount of time for tasks that may have been duplicative or inefficient—in total, the EJC reduced its lodestar by $2,697.50. (*See* Ex. B at ¶¶ 9-10 and all green and yellow highlighted rows on Ex. B-1.)

Ms. Bocchini's declaration sets forth the market rates in the Austin area, as well as the credentials, experience, and expertise of each attorney and law student clerk whose work is the basis of the compromised lodestar figure. (Ex. B at ¶¶ 3-7.) The settlement sum includes $620.00 in costs incurred, together with a lodestar encapsulating 2.2 hours at the rate of $405 per hour for attorney Anna Bocchini (J.D. earned in 2008), 4.2 hours at the rate of $300 per hour for attorney Rebecca Eisenbrey (J.D. earned in 2015), and 5.8 hours at the rate of $125 per hour for law student Mark Conlon, for a total of $3,492.50. (Ex. B at ¶ 11.) Plaintiff has provided adequate documentation of the basis of the fair and reasonable sum for which Plaintiff's claim for attorney's fees and costs was settled.

## II.   Conclusion

WHEREFORE, premises considered, Plaintiff requests that the Court approve the parties' settlement agreement and enter an order dismissing this matter with prejudice.

Respectfully Submitted by:

/s/ *Anna Bocchini*

Anna Bocchini
Texas State Bar No. 24057410
Email: abocchini@equaljusticecenter.org
Rebecca Eisenbrey
Texas State Bar No. 24097646
Email: reisenbrey@equaljusticecenter.org

EQUAL JUSTICE CENTER

510 Congress Ave., Ste. 206
Austin, Texas  78704
Fax (512) 474-0008
Tel (512) 474-0007, ext. 132

Counsel for Plaintiff

## CERTIFICATE OF CONFERENCE

    I hereby certify that on April 17 2020, I conferred via email with Defendants' attorneys, Rekha Roarty and Tony Ciccone of Bollier Ciccone, LLP, regarding the substance of this motion, and they indicated that Defendants are in agreement with the substance of this motion and the proposed order sought herewith.

                                                                                  /s/ *Anna Bocchini*