IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GRACIELA DEL CARMEN ROMERO, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:19-CV-683-RP |
| JOAQUIN LEVYA and P.S.O.B., INC. *d/b/a* PACIFIC STAR RESTAURANT & OYSTER BAR, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are Plaintiff Graciela del Carmen Romero's ("Plaintiff") Agreed Motion for Approval of Settlement, (Dkt. 11), and Motion to Dismiss with Prejudice, (Dkt. 8). She states that she and Defendants Joaquin Levya and P.S.O.B., Inc. *d/b/a* Pacific Star Restaurant & Oyster Bar (collectively, "Defendants") "have reached a settlement of all claims, defenses, and disputes between them in this case," including an agreement "to each bear their own attorney's fees, costs, and other expenses incurred in the lawsuit except as otherwise agreed to in writing among the parties." (Mot Dismiss, Dkt. 8, at 1). Defendants have not yet appeared in this case, though Plaintiff indicates that they are represented by counsel and "are in agreement with the substance" of the motions. (Mot. Approve, Dkt. 11, at 7). After reviewing the parties' settlement, Plaintiff's arguments, and the relevant law, the Court grants both motions.

On March 26, 2020, Plaintiff filed her motion to dismiss. (Dkt. 8). The motion did not request that the Court retain jurisdiction to adjudicate disputes related to the settlement agreement. (*See id.*). On April 3, 2020, the Court ordered Romero to file the parties' settlement agreement for the Court's review prior to ruling on the motion to dismiss. (Order, Dkt. 9). Plaintiff filed her

1

motion to approve the settlement on April 17, 2020, attaching the settlement agreement itself. (Mot., Dkt. 11; Settlement Agreement, Pl.'s Ex. A, Dkt. 11-1; *see also* Bocchini Decl., Pl.'s Ex. B, Dkt. 11-2).

This is an FLSA case. (*See* Compl., Dkt. 1, at 1). Romero's motion to dismiss can be construed as a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i), since Defendants have not served an answer or a motion for summary judgment. This generally "require[s] no judicial action or approval and [is] effective automatically upon filing." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 362 (5th Cir. 2013). Indeed, "'[a] stipulation of dismissal under [Rule 41] ordinarily—and automatically—strips the district court of subject-matter jurisdiction' over the dismissed action." *Def. Distributed v. United States Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (quoting *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 415–16 (5th Cir. 2018)).

However, in the FLSA context, this rule is not necessarily applicable. Rule 41 provides mechanisms for a plaintiff to voluntarily dismiss an action without a court order—automatically stripping the court of jurisdiction as described above—but their use is "[s]ubject to . . . any applicable federal statute," which Rule 41, by its express language, does not supersede. The Second Circuit has held that because "the unique policy considerations underlying the FLSA . . . place the FLSA within Rule 41's 'applicable federal statute' exception," "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *see also id.* at 207 (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177 (S.D.N.Y. 2015)) (holding that settlements under the "uniquely protective" FLSA which insist on "highly restrictive confidentiality provisions" are subject to mandatory judicial review since they are "in strong tension with the

remedial purposes of the FLSA").[1] By this reasoning, Rule 41 stipulations of dismissal after FLSA settlements do not automatically strip the court of jurisdiction. And if Romero's motion to dismiss is construed not as a Rule 41 stipulation but as a motion, there is no jurisdictional issue.

Another court in the Western District of Texas recently summarized the current state of Fifth Circuit law regarding FLSA settlements and stipulations of dismissal, which is worth quoting at length:

> "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). According to *Lynn's Food Stores*, a reviewing court must determine that a settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016) (citing *Lynn's Food Stores*, 679 F.3d at 1355). Notwithstanding the holding in *Lynn's Food Stores*, the Fifth Circuit recognized in *Martin v. Spring Break '83 Productions, L.L.C.* that not every FLSA settlement requires court approval because "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." 688 F.3d 247, 255 (5th Cir. 2012) [(quoting *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005))].
> The reach of *Martin* and its progeny is somewhat unclear. *Martin*'s recognition of a situation in which court approval may not be necessary involved unique facts—a retroactive evaluation of a previously executed, privately entered FLSA settlement that was negotiated by lawyers prior to any lawsuit being filed. See *id.* Additionally, the parties' dispute in *Martin* concerned the number of hours worked and the rate of pay; not substantive FLSA rights themselves like, for example, whether an employee is exempt. See *id.*; *cf. Bodle v. TXL Mortg. Corp.*, 788 F.3d 159 (5th Cir. 2015) (declining to extend *Martin* to private settlement agreement negotiated during a state-court non-FLSA action). Post *Martin*, some district courts in this Circuit have continued to follow the *Lynn's Food Stores* approach, and these courts review FLSA settlement agreements for fairness where parties request an ex-ante review of a settlement negotiated during active FLSA litigation. *See, e.g., Cox v. Sunflower Cty. Consol. Sch.*

---

[1] In *Cheeks*, the Second Circuit listed several examples of problems with settlements that a reviewing court could look for: "a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA"; "an overbroad release that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues'"; "a provision that would set the fee for plaintiff's attorney at 'between 40 and 43.6 percent of the total settlement payment' without adequate documentation to support such a fee award"; and "a pledge by plaintiff's attorney not to 'represent any person bringing similar claims against Defendants.'" 796 F.3d at 206 (quoting *Lopez*, 96 F. Supp. 3d at 173–74, 177, 181; *Guareno v. Vincent Perito, Inc.*, No. 14CV1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014)).

*Dist.*, No. 4:16-CV-192-DMB-JMV, 2017 WL 3584916, at *2 (N.D. Miss. Aug. 18, 2017); *Abernathy v. Becon Constr. Co.*, No. 1:14-CV-466, 2016 WL 7427024, at *1 (E.D. Tex. Dec. 16, 2016), *report and recommendation adopted*, No. 1:14-CV-466, 2016 WL 7374420 (E.D. Tex. Dec. 20, 2016); *Alaniz*, 2016 WL 6462206, at *1.

*Trevino v. Colt Oilfield Servs., LLC*, No. 5-18-CV-01304-FB-RBF, 2019 WL 3816302, at *1–2 (W.D. Tex. May 6, 2019).

Thus, the ambit of the FLSA vis-à-vis dismissals without judicial review of settlement agreements in the Fifth Circuit is not strictly defined like it is elsewhere. *See Martin*, 688 F.3d at 255 ("[T]his court has no binding precedent that resolves whether parties may privately settle a FLSA claim involving a bona fide dispute over whether the plaintiffs worked on days for which they seek unpaid wages."). However, the Fifth Circuit has held a "private settlement of FLSA claims" to be binding when "the settlement gave employees 'everything to which they [were] entitled under the FLSA at the time the agreement [was] reached.'" *Id.* (quoting *Thomas v. Louisiana*, 524 F.2d 613, 615 (5th Cir. 1976)). In *Martin*, meanwhile, the settlements were enforceable as "a way to resolve a bona fide dispute as to the number of hours worked—not the rate at which [the workers] would be paid for those hours." *Id.* at 256.

Given the absence of explicit Fifth Circuit precedent to the contrary, the tendency of district courts within the Fifth Circuit to require review of FLSA settlement agreements, and the compelling reasoning of the Second Circuit, the Court finds that its review and approval of the settlement is appropriate, if not mandatory. *See Trevino*, 2019 WL 3816302, at *2.

In this case, Plaintiff "alleged that she was paid only her regular rate for her hours worked, and that she was denied the half-time premium for all hours in excess of 40 she worked in any workweek." (Mot. Approve, Dkt. 11, at 2 (citing Compl., Dkt. 1, at ¶ 17)). After the "parties engaged in a period of informal discovery, during which Defendants shared Plaintiff's pay records and timeclock data for the three years preceding the initiation of the lawsuit," they "reach[ed] a uniform consensus that the maximum amount of overtime wages possibly owed to Plaintiff totaled

$2,753.75." (*Id.* (citing Compl., Dkt. 1, at ¶ 15)). Nevertheless, the parties had additional "bona fide factual disputes" about whether the timeclock data was accurate and whether Plaintiff's claims were barred by the applicable limitations period. (*Id.* at 3).

After "arms-length negotiations through their respective attorneys," though, Defendants agreed to pay Plaintiff "$5,507.50—consisting of the full $2,753.75 to which Plaintiff believed she was entitled, together with an equal amount in liquidated damages." (*Id.* at 2–3). Plaintiff argues that this amount gives her "'everything to which [she alleged she was] entitled under the FLSA at the time the agreement [was] reached,' and is thus binding and enforceable." (*Id.* at 3 (citing *Martin*, 688 F.3d at 255)). The Court finds that this provision of the settlement agreement comports with *Martin* and is a fair result of good-faith negotiations between the parties. It is therefore binding and enforceable.

Furthermore, the attorney's fees provision of the settlement is appropriate and align with the remedial purposes of the FLSA. (*See* Settlement Agreement, Pl.'s Ex. A, Dkt. 11-1, at 3 The settlement agreement requires that Defendants pay "Plaintiff's counsel's nonprofit law firm, the Equal Justice Center ("EJC"), $3,492.50 to settle Plaintiff's claim for attorney's fees and costs." (*Id.* at 4). Importantly, this payment does "not cut into Plaintiff's full recovery of her maximum potential damages, but rather [is] a separate sum paid in addition to Plaintiff's alleged wages and liquidated damages." (*Id.*). The figure "constituted the sum of the costs incurred by Plaintiff's counsel and a fair and reasonable compromise of the lodestar value of the EJC's time invested in the matter through September 3, 2019." (*Id.* at 5). While Plaintiff's counsel worked additional hours on this case, "the parties' negotiations centered on the fees accrued prior to the date on which they reached an agreement as to the monetary settlement amount." (*Id.* at 5 n.6).

Plaintiff supports her attorney's fees calculation with "detailed, contemporaneous records of costs incurred as well as time spent on each task that was necessary to the successful resolution of

this matter." (*Id.* at 5; *see* Billing Recs., Pl.'s Ex. B-1, Dkt. 11-2, at 9–10). She also notes that her counsel, in tabulating its appropriate fees, "reduced its lodestar by $2,697.50." (Mot. Approve, Dkt. 11, at 6). The Court finds that the lodestar Plaintiff has provided is appropriate and declines to adjust it. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The Court also finds that the attorney's fees provisions in the settlement agreement are fair and reasonable.

Finally, other salutary portions of the settlement agreement are in concordance with the policy rationales underlying the FLSA. It does not subject any party to confidentiality requirements. (Mot. Approve, Dkt. 11, at 6). Its claims release provisions are strictly limited to those claims that were and could have been asserted in this case. (*Id.*). And it contains an anti-retaliation provision prohibiting Defendants from taking adverse action against Plaintiff (and anyone else) for exercising her rights under the FLSA. (*Id.*). These provisions avoid certain pitfalls that would render the settlement unfair and unreasonable. *See Cheeks*, 796 F.3d at 206. The settlement agreement is thus consistent with the FLSA's purposes of protecting workers "from substandard wages and excessive hours" and safeguarding their ability to obtain relief to which they may be entitled. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

Accordingly, **IT IS ORDERED** that Plaintiff's Agreed Motion for Approval of Settlement, (Dkt. 11), is **GRANTED**. Plaintiff's Motion to Dismiss with Prejudice, (Dkt. 8), is **GRANTED**. Plaintiff's claims against Defendants, (*see* Compl., Dkt. 1, at 5), are **DISMISSED WITH PREJUDICE**. The Court will render final judgment under Federal Rule of Civil Procedure 58 in a separate order.

**SIGNED** on April 23, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE